The AmeriCorps judges of the United States Court of Appeals, in and for the self-and-judicial sake of the hearing, all persons having presence before this Honorable Court are admonished to turn their attention as the Court is now sitting. God save the United States and this Honorable Court. Good morning, everyone. Oh, it's so wonderful to see you all on this extraordinarily beautiful day. So thank you for coming. And we're going to get down to why we are here. First case of the day. Appeal 23-27-28, Judith Robinson v. Healthnet. And come on up, Mr. St., and get yourself together. That could take a while now to get on. Did you say it won't take long? I said it could take me a while to get it together. Oh, that's fine. But I will proceed as swiftly as I possibly can. No, no, no. We are here for you and every one of you. Okay. I'm ready whenever the judges are. Go ahead. Just watch the clock, okay? Everyone watch the clock. Thank you. First of all, I want to thank each and every one of you for affording us 20 minutes, the opportunity to argue this case. Well, now it's only 1951. I'm moving ahead, Your Honor. This is a – this appeal arises out of a KTAM action that was filed in the Southern District of Indiana. Ultimately, the original KTAM action was settled in April, May of 2017. I refer to that as Robinson 1. My client is the relator, Dr. Judith Robinson. In that written settlement agreement, which is pivotal to the district court's decisions, Ward 2 was a basic agreement. Dr. Robinson brought claims under both the federal and state False Claims Act alleging anti-kickback violations, other violations, along with what we refer to as the ultrasound wraparound claims. In the written settlement agreement that was entered into in April of 2017, it resolved all the claims with the exception of the wraparound claims. And the essential terms were the defendants, IU Health and Health Net, paid $18 million to the government, and the ultrasound claim was set aside. The court, the district court, dismissed the count three of the amended complaint on a factual attack as to Dr. Robinson's standing. We disagree with the district court. Forgive me, but I think maybe we should get into the argument because we know everything you just said. I think what we should—well, let me start you out. That will help hopefully. I did not see any details about when the oral settlement was exactly reached, with exactly whom it was reached, whether it was between the United States, Indiana, Health Net, and Robinson, or just between Health Net and Robinson. I didn't see details. Okay. Doesn't that lack of detail, unless you can give them to me, about the creation of this alleged oral agreement tend to show that it doesn't exist? Your Honor, to answer that question, there was an oral agreement reached sometime from May 2017 until 2019, and the evidence of that is set forth in our brief, but Judge Dinsmore, who is a magistrate judge in Indianapolis, memorialized that agreement, and in his memorial, he stated, eventually in September 2016, the parties reached a settlement, and the final agreement was executed in April 2017. However, at the time the settlement was reached and the details were negotiated, no party was able to provide a specific value of the Health Net wraparound claims from 2011 to 2015. Because of a delay in the state's reconciliation process, the parties agreed to exclude these claims from Relator's release and dismiss the subset of claims without prejudice. You see, look, you have relied heavily on the Court's entry denying the motion to reopen Robinson 1 as evidence that an oral agreement existed, but you see, that entry doesn't say anything about an oral agreement, and the motion to reopen was denied. So maybe you can explain. I really am trying. It was a very simple agreement. But how does that entry prove that an oral settlement? Health Net released, was willing to release the claims, the wraparound claims. We didn't know what the value of those claims were. They went through the state's reconciliation process, and they were reconciled with a value of $1.454 million. Mr. Sabe, I have the same question as Judge Rovner. You have argued that the entry you just read is proof that there was an oral settlement. Yes. I don't see that anywhere in there. It sounds to me like that is proof that the wraparound claims were not settled because you couldn't determine what the amount was, which is why they were dismissed without prejudice. Well, let me point the Court to another section of Judge Densmore's entry. In March 2018, the state of Indiana completed its reconciliation process and determined the wraparound claims to be worth $1.45 million. There is no dispute as to the value of these claims or as to the amount of the relator's share award. Both the state and federal government believe the other entity has received the benefit of the settlement, and therefore the other entity is responsible for paying the relator's share. We don't, in a Keaton case, we don't even get to a relator being permitted to receive a relator's share until there's a settlement, and that is what Judge Densmore is memorializing. If we do not agree with you that that memorializes a settlement among the parties, what are you relying on for the settlement here? The allegations in your complaint suggest that there was an oral agreement during Robinson 1 before the written agreement was finalized. You've seen to move off of that in your briefing, but of course with the motion to dismiss stage, we have to go with what's in the complaint. I am struggling with the same issue that Judge Rovner is, that where do you allege sufficiently the existence of a settlement agreement? Are you referring to the allegations within the amended complaint? Exactly, because this is a motion to dismiss. For allegation purposes, I know there's a factual issue on the standing, but for allegation purposes, that's what we have to look to. In the amended complaint, we set forth the essential term. Health Net was willing to release the claim, and Robinson was willing to dismiss her lawsuit. Here's the challenge. Releasing the claim and dismissing without prejudice is very different than settling the claim. Right, but in the allegations within the amended complaint, we set forth the essential term of that agreement. Maybe that's where we go and answer the second portion of Judge Rovner's question. If the timeframe of when this oral settlement occurred is May 2017 to 2019, who engaged in the settlement? Who are the parties that the complaint identifies? It would be Dr. Robinson and Health Net. But who? Where in Health Net? Who? What? Health Net is an indigent set of clinics within Indianapolis. We know. Yes, but to answer Judge Pryor's question, we allege that the agreement was the releasing of the claims by Health Net, the waiving of the claims, and Dr. Robinson would then dismiss her claim against Health Net. Judge Dinsmore's entry says the following, quote, I'm going to quote, at the time settlement was reached and the details were negotiated, no party was able to provide a specific value of the Health Net wraparound, end quote. Why does the word settlement in that context not refer to the settlement of claims covered by the written settlement agreement executed after Robinson won instead of the wraparound claims covered by the alleged oral settlement agreement? I think you may have asked two questions. I probably asked 12. I'm sorry. No problem. We could not reach the terms of a settlement agreement with respect to the wraparound claims in April, May of 2017 because we did not know the value of those claims. And therefore, as we have asserted both in our amended complaint, as Judge Dinsmore sets forth here, it wasn't until March of 2018 that the reconciliation process was complete. So we knew what the value of the wraparound claims were for settlement purposes and establishing a relater share for Dr. Robinson. All of that might be true, but where have you alleged that you actually reached a settlement? In the amended complaint. I don't see that in the amended complaint. That's not one of the documents I have right here in front of me, but I believe we did. Can I ask, who is Dr. Robinson bringing count three on behalf of? Is it an individual claim, or is she bringing it on behalf of the United States and Indiana? The latter. She is bringing the claim on behalf, not in her individual capacity. She's bringing the claim, and it very clearly sets forth that she's bringing the claim in her capacity as a relater on behalf of the United States and Indiana. But the United States, the breach of a contract is against Health Net on behalf of the United States and Indiana? Well, that count three is seeking to enforce the settlement reached by the relater and Health Net. I guess that's where I'm not clear. What is the breach? From the complaint, what are the facts that allege a breach of contract by Health Net? Health Net had agreed to release or waive their claims. We were waiting, waiting, waiting, and there's some information in the briefs about waiting to get a written settlement agreement. So we brought count three to enforce both the United States and the state of Indiana's rights. I just want to slow us down looking at the facts. If Health Net has agreed to release the claim for the wraparound services, Health Net has done that according to the allegations in the complaint. So if we accept that there was an oral settlement agreement by Health Net, I'm asking what are the facts that Health Net has breached the oral settlement agreement? I'm setting aside the question as to whether or not there was an oral settlement agreement. I'm asking you to tell me or to articulate what are the facts in the complaint, the amended complaint, that demonstrate a breach by Health Net? The fact that they had agreed to waive these, the fact that we were willing to dismiss the case, and we had waited forever with all sorts of assurances from Health Net that they were preparing the final written settlement agreement, which they never tendered to us. You know, rather than filing a suit against the United States and Indiana, as Judge Dinsmore suggested, Dr. Robinson brought another suit against Health Net. Why didn't she just follow the judge's instructions? Well, the problem is we would have had a problem under the 11th Amendment bringing a lawsuit against the state of Indiana. And at that time, Judge Rovner, we did not know who had received the recovery. We didn't know whether the United States had received the recovery or not. So we brought it in a representative form as the relator because we couldn't sue the state of Indiana under the 11th Amendment. And, of course, Dr. Robinson never attempted to amend Count 3 of the amended complaint, and I am well aware that you maintain that that would have been futile. But how can we ever know it would have been futile? I'm sorry, I missed a part of that question. My apologies. Well, you know, Dr. Robinson didn't attempt to amend Count 3 of the amended complaint, right? And I believe that you maintained that it would have been futile to do that. But how can we ever know it would have been futile if you didn't do it? I don't think it would have been futile. And I'm not sure what the court means by futile. Well, that it wouldn't have worked? Well, see, I think it should have. Who has a dictionary? Quick, quick, quick. And I'm not quibbling about the use of the word futile. I thought you used that word to be perfect. I may have. In fact, I think I have seen that word. But that's all right. Mr. Saint, you've said that you're bringing this claim on behalf of the United States and Indiana in a relater capacity. But Dr. Robinson dismissed her claims against the United States. Right. So how can she still proceed in that capacity? Because the settlement agreement that was reached in April of 2017 excluded that set of claims that she subsequently brought. But she subsequently dismissed those claims in this action. Right. Against the United States. Exactly. Yes. So how could she still be claiming a breach on behalf of the United States? She is not any longer. It's on behalf of the state of Indiana. When did that occur? When did that occur? Through the course of the litigation. That's not what you said a couple minutes ago. Right. So I'm a little confused. Oh, I meant initially when she brought the action. My question was, who were the parties to the contract? And you mentioned it was Health Net, the relater, on behalf of the United States and Indiana. That is correct. And so under count three, because counts one and count two were dismissed, as we sit here in oral argument today, is that there was a breach of contract now on behalf of the relater standing in the place of Indiana? That is correct. Okay. Tell me this. Do you or did you challenge Indiana's contention that the settlement is in the best interest of the state and those who are served by Health Net? Well, Your Honor, we did challenge that. Ultimately, Health Net and Indiana entered into an agreement, which was approved by the district court to settle count two, which was the False Claims Act under the state statute. We challenged that on two bases. One, the court should not have reduced the amount of the settlement by FMAP, which is the federal share of a Medicaid claim because the court had already determined the federal government had no recovery. They couldn't. They didn't have recovery. They couldn't have released anyone. And why is Health Net wrong when it contends that it has no control over the amount of Dr. Robinson's share that you claim was part of the oral agreement? Why is it wrong? I'm not sure why they say they have no control. I mean, ultimately, I think they're saying they're not responsible for the share. It would be the share award being paid by the state of Indiana. Doesn't the statute specifically provide that? Absolutely. Well, it provides that Indiana decides it, not Health Net, and that Indiana pays it. That is correct. So then why is Health Net breaching it? Because we had to settle that group of claims. But how can Health Net breach it if they are statutorily not responsible for paying it or setting it or agreeing to it? The agreement was to waive or release those claims, which were valued. And they did. And they did. So there's no breach. Well, they didn't do it initially. They had agreed to. They've since done it. So what's the breach? Well, in their doing it, it substantially reduced Dr. Robinson's relator share because at the time it was at. Which brings me back to the question. It seems to me that that's what this is about. It's about her share of the relator amount. That is correct. And by statute, and it's only in the capacity with Indiana suing. By statute, Indiana determines the amount of the relator share, and Indiana has to pay it. And you are suing Health Net. So what is Health Net's breach? I still don't understand. Because they never formalized the agreement. And that's what we were attempting to do is bring resolution to that group of claims on behalf of the state of Indiana. And the state of Indiana stood in our way and attempted to reduce her share award. It should have been valued at $1.45 million. Okay. Thank you very much. Thank you. Ms. Barrow, can you hear us? Yes, I can. I actually should have asked that 20 minutes ago. But okay. But you would have let us know. I would have. Yes, my name is Frances Barrow. I represent the state of Indiana. I'll be using all 20 minutes of appellee's time with the agreement of Health Net. The state is asking this court to affirm the order that granted the state's 12B1 motion to dismiss and the order approving the state's settlement with Health Net. As the court has realized that the oral agreement that Relater alleges existed, without proving that there was that agreement, she has no standing to bring count three. Generally, the Relater share doesn't even exist until the matter is concluded and recovery is made. If she had some kind of settlement agreement that would have been different, she has not proven that. She has made it clear, at least until this appeal, she's made it clear that that agreement was reached September of 2016. That is when the parties reached the settlement in Robinson 1. And that is further alleged in her complaint. Paragraph 41. Based on the party's contract, this action was dismissed without prejudice on May 3rd, 2017. Well, this action is Robinson 1. And to a large extent, her briefing conflates the consent of the state, the consent of the federal government as to this oral agreement with the government's actions in Robinson 1. Ms. Barrow, why was the dismissal on that basis one for standing rather than merits? Because essentially the court concluded she hadn't stated a claim, that there's no contract and there are other issues as well. But that sounds like a merits determination as opposed to a jurisdictional determination. I would say she's half-standing she had to allege some injury in fact. And the only way she could prove that was, here's our oral agreement. And nothing she put forward in her complaint or in any other of the documents that she brought forward in the district court showed the existence of any kind of agreement. We would look at that question, though, as far as whether or not there was an agreement. Isn't that going to the merits of whether or not there's been a breach of a contract? Because one of those elements you have to prove is the existence of a contract. So why would that not be a 12b-6 argument instead of a 12b-1? I understand the question. And if it in fact is a merits determination, I would say that's still adverse to the relator because she did not prove that there's a contract. But would we have to send it back because we wouldn't be able to get to the merits? Beg your pardon? We would not be able to get to the merits because the judge said because we don't have jurisdiction under 12b-1. And so we would not be able to extend, right? It appears that there's some overlap between adjudicating the merits and looking at whether she had standing. I don't know how else to put it. And looking at her count one, her count three, it's solely a personal claim on her behalf as relator. She wants the court to order payment of relator's share. That's what count three is all about. And so she has to have standing. She has to show some injury in fact against her standing to bring that claim. And she has fallen completely short of showing the existence of any oral agreement with Health Net or anybody else. And to the extent that she says she has pled sufficient allegations to prove that there was an oral agreement, there has to be some plausible. The allegations have to be plausible. And as the court indicated earlier, she is saying that she had an agreement with Health Net as to the amount of relator's share. And that is contrary to law. Okay. After the completion of the litigation, she would negotiate with Indiana, with the government, but not with Health Net. If Dr. Robinson had not initiated the QUTEM suit, no one had discovered the fraud, and therefore Indiana had paid Health Net the requested amount for wraparound claims, would Indiana have been entitled to the United States payment on 66.92% of the wraparound claims? I think Indiana's recovery is always going to be subject to the federal share. And so even regardless of whether the government intervenes, it's still involved. And so in Robinson 1, the government did not intervene, and she ran that entire operation. In Robinson 2, Indiana intervened and did the work. Nobody represented the interests of the United States, including the relator. And so that's another reason as to the settlement agreement with Health Net that the state is arguing that her recovery should be reduced by the amount of the federal share. That's what happened in Robinson 1. All right. She did receive, the recovery was $18 million. She received a 27.5% share of that because nobody intervened. Okay. She was in charge of that entire case. And her recovery was reduced by the federal share. What we're looking at in this case is different because Indiana intervened. Indiana ran the entire litigation, and she did not represent the interest of the federal government. And so the district court reasonably held that, yes, it's proper to apply the federal share to her recovery. And so that gets to the approval of the settlement with Health Net. But getting back to the 12v1 dismissal, if this court determines, as the district court determined, that there was never, she did not sufficiently provide evidence of or sufficiently raise allegations into her complaint of the existence of an oral settlement, then she has no injury in fact, and therefore lacks standing. The settlement agreement between Indiana and Health Net. The settlement agreement, the district court properly determined that this was, as a matter of public policy, approving the settlement was proper. The state had determined that it would not levy any civil penalties against Health Net because Health Net, you know, that could be, that would all come from Health Net's, the money available to provide Medicaid services. And so Indiana decided to forego pursuing civil penalties. Health Net released its rights to receive payment on the unpaid wraparound claims. That's what you have to negotiate with a defendant. And in addition to releasing its rights, it stopped the practices. And also Health Net worked cooperatively with the United States and Indiana entering into these settlements. And the settlement was reasonable, simply from the cost opportunity standpoint. The time, the resources it would have taken not to settle, but to go to trial would have been out of proportion to the actual, the amounts, the interest involved in Robinson too. Indeed.  Indeed. Your briefing, in your briefing, you maintain that Dr. Robinson is receiving more than she would otherwise be entitled to because of your, because of the state of Indiana's intervention. Because of the state of Indiana's intervention. Yes. And the, as the, as the brief points out, the, the total amount of those wraparound claims, the $1.4 million. She agreed to reducing that amount based on the statute of limitations and race judicata. And so she cannot come back and say, well, that's not a proper basis for, for determining what's at stake. And so the state's brief of page 31, we set out through her failure to act the way she reduced the basis before application of the federal percentage, and that comes to $81,065. The next paragraph is where we say that the settlement actually increases her potential recovery up to $155,000. And so her, her argument as to the settlement really comes down to whether the federal share was properly taken from the amount of her recovery. And the state, first of all, this, this court reviews a settlement for reasonableness. Okay. And so it was reasonable under the circumstances to say the federal government gets a share, because it was a party. She, she did not do anything on behalf of the federal government, she actually agreed to the dismissal of the federal government from Robinson too. And it's, it's well known that Medicaid payments to states, or Medicaid funding, at least in Indiana, it's about two thirds of the, of the full amount of Medicaid funds. And so, and so it was reasonable to reduce her recovery. Otherwise, why have the state be on the, on the hook for the entire amount of her share. The state is willing to pay its share, which is after the federal amount is deducted. And so this court can hold that the approval of the settlement with HealthNet was reasonable, and also find that the, in its de novo review of the 1201 dismissal, that, that, that was correct as a matter of law. Okay. Okay. Thank you. All right. Thank you. Oh, there you are, Ms. Barrow. Thank you. Oh, you have four minutes. Oh, thank you very much. Yeah, I'm, no, four. He asked for four. We're going to give you four. We peppered you with questions. Excuse me? We peppered you with questions. I appreciate that. I want to, I want to talk about a couple points that the court raised in, in the state's oral argument. First of all, based upon the district court's findings and their decision, the federal government never received a recovery because the state of Indiana never put it on notice. So if there had been any recovery, none of that recovery would have gone to the federal government. The entire recovery went to the state of Indiana. So then to reduce the state's recovery by two thirds, based upon something the federal government would never have received. But this was all hypothetical anyway, because there was no, there had been no money provided. So we have to kind of complete the hypothetical exercise that if this 1.4 million had been claimed by Indiana to the United States, hypothetically the United States would have had to reduce India by the, you know, the federal share. And so we have to almost kind of complete the hypothetical math problem. And so why did the district court get that wrong? Because the district, the federal government had no obligation to pay. Under the rules, the state of Indiana, when they receive a Medicaid claim, they are supposed to put CMS, the federal government, on notice. According to the district court, they never did that. Therefore, the federal government, CMS, was never on the hook for any of the wraparound claims. The entire recovery of the $1.454 million was a recovery to the state of Indiana. And therefore, the state. It was a hypothetical recovery to the state of Indiana. The state of Indiana never requested this funding. It was more than hypothetical. When Dr. Robinson brought her initial complaint in Robinson 1, it flagged that there might be fraud to FSSA, which is the state Medicaid arm. And therefore, they didn't pay any of those claims. So, in essence, Dr. Robinson saved the state of Indiana $1.454 million. It wasn't hypothetical. It was a true recovery. But I think what we're trying to drill down, though, is the related share of the recovery. Yes. And so that's why I say we're talking really about a hypothetical math problem. And so not that it's a hypothetical fraud that was completed when Health Net submitted the claims. What we have in front of us, though, is a breach of contract by Health Net based on an agreement that was made as to the related share. That is basically when you get down to the bottom line, that's basically the bottom line. But, and I'm sure the court is aware, we have briefed it. But there are circuit court decisions that basically say, hey, once you reach a resolution, you have to then reconcile what is being released, the claims that are being released, because then that becomes a part of the related share. And that's the reason why it was reconciled. It came up with $1.454 million. And Dr. Robinson should receive an entire share. It shouldn't be reduced by FMAP, which is the federal matching. One last, well, I've got four seconds. You go. You finish. OK. Thank you, Your Honor. One thing that I do want to point out in KETAM cases, I'm sure you're aware of it, procedurally, once the relator and the defendant reach an agreement, that agreement has to be tendered to the court. Because both the federal court or the federal government and the state government have to either consent to it or object to it. And that's the reason we brought the action. But not if the state intervenes. Correct. If the state intervenes, then the state is involved in the settlement, not the relator. I agree. But if the state's intervention is for the purpose of reducing the relator's share, that's another matter. OK. Thank you. Well, thank you. Thanks to both of you, Ms. Barrow, Mr. Stank. The case will be taken under advisement.